**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| **ROBERT L. DERRY,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 1:18-cv-00090-SLC |
| | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY**, *sued as Nancy A.* | ) | |
| *Berryhill, Acting Commissioner of SSA,* | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Robert L. Derry appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying his application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1] (DE 1). For the following reasons, the Commissioner's decision will be AFFIRMED.

## I. FACTUAL AND PROCEDURAL HISTORY

Derry applied for DIB and SSI in April 2013, alleging disability as of May 3, 2012. (DE 10 Administrative Record ("AR") 186-88, 194-99). Derry was last insured for DIB on March 31, 2017 (AR 1063), and therefore, he must establish that he was disabled as of that date with respect to his DIB claim. *See Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997) (explaining that a claimant must establish that he was disabled as of his date last insured in order to recover DIB benefits). Derry's application was denied on initial consideration and on reconsideration. (AR 137-52).

---

[1] All parties have consented to the Magistrate Judge. (DE 13); *see* 28 U.S.C. § 636(c).

A hearing was held on February 14, 2014, before an administrative law judge ("ALJ"), ALJ Maryann S. Bright ("ALJ Bright"), at which Derry, who appeared *pro se*, and a vocational expert testified. (AR 59-90). On May 14, 2014, ALJ Bright rendered an unfavorable decision to Derry, concluding that he was not disabled because despite the limitations caused by his impairments he could perform a significant number of unskilled, medium-exertional jobs in the economy. (AR 43-53). The Appeals Council denied Derry's request for review (AR 1-3), at which point ALJ Bright's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

On December 23, 2015, Derry filed a civil action in this Court, and on February 28, 2017, the Court issued an Opinion and Order remanding the case to the Commissioner for further proceedings. (AR 886-902). Pursuant to the Court's Order, the Appeals Council remanded the case to an ALJ on June 12, 2017. (AR 905). On remand, a hearing was held before ALJ Terry Miller ("ALJ Miller") on December 12, 2017, at which Derry, who was represented by counsel; Derry's father; Dr. Nathan Strahl, a medical expert; and Marie Barhydt, a vocational expert, testified. (AR 731-805). On February 8, 2018, ALJ Miller rendered another unfavorable decision to Derry, concluding that he was not disabled because despite the limitations caused by his impairments he could perform a significant number of unskilled, light-exertional jobs in the economy. (AR 705-22). Derry did not seek review of the decision by the Appeals Council, and ALJ Miller's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

Derry filed a complaint with this Court on April 12, 2018, seeking relief from the Commissioner's final decision. (DE 1). In this appeal, Derry argues that ALJ Miller erred by:

2

(1) improperly discounting the opinion of Catherine Duchovic, his treating psychiatric nurse practitioner; and (2) failing to evaluate a one-page affidavit from Garrett Hill, a former employer. (DE 18 at 9-14).

At the time of ALJ Miller's decision, Derry was 38 years old (AR 186, 722); had a high school education (AR 241); and had past work experience as a janitor, fast food worker, drill press operator, maintenance mechanic, sales clerk, and delivery driver (AR 1150). Derry alleges disability due to the following impairments: obesity, chronic left knee pain due to a left knee injury/left knee chondrocalcinosis, bipolar I disorder, social anxiety disorder, and social phobia. (DE 18 at 2). Derry does not challenge the findings of ALJ Miller in regard to his physical residual functional capacity ("RFC") (DE 18 at 9-14); rather, his arguments center on the ALJ's consideration of his mental impairments.

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court reviews the entire administrative

record but does not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III. ANALYSIS

#### A. *The Law*

Under the Act, a claimant is entitled to DIB or SSI if he establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A), 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment or combination of impairments meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App'x 1; (4) whether the claimant is unable to perform his past work; and (5) whether the claimant is incapable of performing work in

4

the national economy.[2]  *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted); 20 C.F.R. §§ 404.1520, 416.920.  An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled.  *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (citation omitted).  A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled.  *Id.* (citation omitted).  The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner.  *Clifford*, 227 F.3d at 868 (citation omitted).

## B. The Commissioner's Final Decision

On February 8, 2018, ALJ Miller issued the decision that ultimately became the Commissioner's final decision.  (AR 705-22).  At step one of the five-step analysis, ALJ Miller found that Derry had not engaged in substantial gainful activity since his alleged onset date of May 3, 2012.  (AR 708).  At step two, ALJ Miller found that Derry had the following severe impairments:  a history of bipolar affective disorder/depression, reported social anxiety disorder/social phobia, a history of poly-substance dependence/abuse, primarily the abuse of marijuana/synthetic marijuana/cannabis use disorder, obesity, and chronic left knee pain due to left knee injury/left knee chondrocalcinosis.  (AR 709).  At step three, ALJ Miller concluded that Derry did not have an impairment or combination of impairments severe enough to meet or equal a listing.  (AR 709-11).

Before proceeding to step four, ALJ Miller considered Derry's symptom testimony and found that it was not entirely consistent with the medical evidence and other evidence of record.

---

[2] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks the claimant can do despite his limitations.  20 C.F.R §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a).  The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of.  20 C.F.R. §§ 404.1520(e), 416.920(e).

(AR 719). ALJ Miller then assigned Derry the following RFC:

> [T]he claimant has the physical [RFC] to perform light work . . . . The claimant retains the mental [RFC] to understand, remember, and carry out simple, routine, repetitive tasks consistent with unskilled work (defined as occupations that can be fully learned within a short period of time of no more than 30 days, and requires little or no judgment to perform simple tasks). He has the ability to sustain those tasks throughout the eight-hour workday without frequent redirection to task. His ability to use judgment in making work-related decisions is limited to making only simple work-related decision[s]. The claimant cannot tolerate sudden or unpredictable workplace changes in terms of use of work tools, work processes, or work settings and if there are workplace changes, they are introduced gradually. He cannot perform tasks requiring intense/focused attention for more than two hours continuously, but can maintain attention/concentration for two-hours segments of time. He cannot perform work that requires satisfaction of strict or rigid production quotas or that involves assembly line pace work. As to social interactions, the claimant can engage in only superficial interactions with supervisors and coworkers defined as occasional and casual contact with no prolonged conversations. Contact with supervisors must be short but allows the supervisors to give instructions. He cannot interact with the general-public. He should not have concentrated exposure to intense or critical supervision, and is best suited to working alone, in semi-isolation from others, or as part of a small group.

(AR 711). Based on the RFC and the vocational expert's testimony, ALJ Miller concluded at step four that Derry could not perform any of his past relevant work. (AR 720). At step five, ALJ Miller found that Derry could perform a significant number of unskilled, sedentary jobs in the economy, including address clerk, document preparer, and surveillance system monitor. (AR 721). Therefore, Derry's applications for DIB and SSI were denied. (AR 721-22).

### C. Ms. Duchovic's Opinion

Derry argues that ALJ Miller improperly discounted the opinion of Ms. Duchovic, his treating psychiatric nurse practitioner at Park Center. Contrary to Derry's assertion, ALJ

6

Miller's weighing of Ms. Duchovic's opinion is supported by substantial evidence.

The opinion of a nurse practitioner is not an "acceptable medical source" under the Social Security regulations, but rather is considered an "other source." *Masch v. Barnhart*, 406 F. Supp. 2d 1038, 1055 (E.D. Wis. 2005); SSR 06-03p, 2006 WL 2329939, at *1-2 (Aug. 9, 2006). Although information from an "other source" cannot establish the existence of a medically determinable impairment, it may be used "to show the severity of the individual's impairment(s) and how it affects the individual's ability to function." SSR 06-03p, 2006 WL 2329939, at *2; *see Koschnitzke v. Barnhart*, 293 F. Supp. 2d 943, 950 (E.D. Wis. 2003). "[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' . . . when such opinions may have an effect on the outcome of the case." SSR 06-03p, 2006 WL 2329939, at *6; *see Masch*, 406 F. Supp. 2d at 1055 (stating that opinions from "other sources" must not be ignored). "[D]epending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source." SSR 06-03p 2006 WL 2329939, at *4.

Here, Derry saw Ms. Duchovic for medication management approximately 20 times from March 2014 through October 2017; Ms. Duchovic's treatment notes consist mainly of check-the-box forms. (AR 1183-90, 1197-1203, 1208-15, 1243-51, 1310-36, 1352-61, 1385-93, 1426-34, 1447-55, 1480-84, 1509-13, 1516-18, 1541-44, 1571-80). Derry also received counseling, group therapy, and case management services from Park Center during this period. (*See generally* AR 532-33, 1191-1582).

On November 8, 2017, Ms. Duchovic completed a five-page mental impairment

7

questionnaire, providing both yes/no and narrative answers. (AR 1823-27). Ms. Duchovic qualified essentially all of her answers by writing "per client report" beside them, even when doing so made little sense.[3] (AR 1823-27). Specifically, Ms. Duchovic identified Derry's symptoms "per client report" as insomnia, nightmares, depressed mood, low energy, isolation, anxiety, paranoia, crying outbursts, and concentration difficulties. (AR 1823). She wrote that "per client report" Derry's depressed mood occurred daily for at least three months, and that "per client report" he could not control his depression, emotional outbursts, short temper, and increased anxiety. (AR 1823). Similarly, Ms. Duchovic circled "Yes" and added "per client report" to the following questions: whether Derry's symptoms would worsen if he were to return to full-time work; whether his mental illness would like cause him to be absent from work, tardy, or cause him to leave work early more than three times a month, excluding any problems relating to substance abuse; and whether his mental illness was serious enough that he would have trouble maintaining attention and concentration during an eight-hour workday for unskilled work, excluding any problems relating to substance abuse. (AR 1824-26). Ms. Duchovic further indicated "per client report" that Derry could remain on task in unskilled work less than 70 % of the day and tolerate no more than occasional, superficial contact with others. (AR 1826-27).

At the hearing, ALJ Miller called a medical expert, Dr. Strahl, a psychiatrist, to review Derry's record and testify regarding the psychological evidence in the case. (AR 736-53). In a nutshell, Dr. Strahl opined that when Derry was taking his medication as prescribed and not

---

[3] For example, in response to whether she saw Derry with the frequency consistent with accepted medical practice for the type of treatment or evaluation required for Derry's medical condition, Ms. Duchovic circled "Yes" and wrote "per client report" beside it. (AR 1823). Ms. Duchovic answered the same in response to whether Derry's treatment plan is consistent with the nature and severity of Derry's mental impairment. Clearly these two questions sought Ms. Duchovic's professional judgment, not Derry's subjective report.

using substances, he could do simple work requiring minimal contact with supervisors and the public, and occasional contact with coworkers; Dr. Strahl estimated that Derry would miss no more than one day of work per month due to his mental impairments. (AR 746-49). Dr. Strahl testified that he had reviewed Ms. Duchovic's mental impairment questionnaire but that it should be given no weight, because it essentially "quote[s]" Derry's subjective statements and was not based on "anything objective in the medical record." (AR 745).

In his decision, ALJ Miller considered the opinions of Ms. Duchovic and Dr. Strahl in detail, penning at least 10 paragraphs about Ms. Duchovic's opinion and many more about Dr. Strahl's opinion. (AR 710-19). ALJ Miller also penned three paragraphs on the opinion of Dr. B. Randal Horton, a state agency psychologist, who reviewed the record on March 30, 2016, and concluded that Derry's mental impairment was non-severe. (AR 864-65). Ultimately, ALJ Miller assigned significant weight to Dr. Strahl's opinion (AR 711); the narrative portion of Dr. Horton's opinion; and Dr. Horton's finding that Derry had moderate deficits in concentration, persistence, or pace (AR 718). ALJ Miller gave no significant weight to Ms. Duchovic's opinion (AR 716) or the remaining portions of Dr. Horton's opinion (AR 718).

In discounting Ms. Duchovic's opinion, ALJ Miller explained that he agreed with Dr. Strahl's reasons for giving Ms. Duchovic's mental impairment questionnaire little weight. (AR 713). ALJ Miller and Dr. Strahl observed that Ms. Duchovic's medical impairment questionnaire was essentially based on what Derry said he could or could not do, rather than on objective findings; Ms. Duchovic did not list any mental diagnoses in the questionnaire; she did not directly address Derry's past substance use in her answers; and her treatment records do not fully support and are not entirely consistent with the limitations in the questionnaire. (AR 713,

9

715-18). ALJ Miller concluded that while the treatment records overall indicate that Derry would have some problems working, they do not establish greater limitations of function than expressed in the assigned RFC, which is supported by Dr. Strahl's and Dr. Horton's opinions. (AR 718).

Derry challenges ALJ Miller's reasoning for discounting Ms. Duchovic's opinion. First, Derry argues that Ms. Duchovic's limitations are based on Derry's depression, crying spells, and anger/emotional control problems, which are reflected in Ms. Duchovic's treatment notes at Derry's medication-management appointments. In that regard, Ms. Duchovic's treatment notes consist mainly of check-the-box forms that routinely indicated that Derry had withdrawn behavior; some crying episodes; depressed, anxious, or fluctuating mood; and depressive, hopeless, and helpless thought content; but a cooperative attitude; coherent thought form; congruent affect; alert sensorium; fair judgment; no homicidal ideation, and rarely any suicidal thoughts and no suicidal intent. (AR 1183-90, 1197-1203, 1208-15, 1243-51, 1310-36, 1352-61, 1385-93, 1426-34, 1447-55, 1480-84, 1509-13, 1516-18, 1541-44, 1571-80). As such, while Ms. Duchovic's treatment records certainly support some degree of mental impairment, ALJ Miller was correct in observing that "her treatment records do not fully support and are not entirely consistent with her [medical source] statement." (AR 717); *Brown v. Astrue*, No. 1:10-cv-01035-SEB-MJD, 2011 WL 2693522, at *4 (S.D. Ind. July 8, 2011) ("The lack of objective support for a conclusion is a valid reason for discounting a treating physician's opinion." (citations omitted)); *see Henke v. Astrue*, 498 F. App'x 636, 640 (7th Cir. 2012) ("The ALJ rightly emphasized that Dr. Preciado's sweeping conclusions lacked support in his own treatment notes." (citations omitted)).

10

Furthermore, in completing the questionnaire, Ms. Duchovic never referenced her treatment notes, or for that matter, the notes of any other Park Center clinician; rather, she made it clear that she based her assessment on Derry's subjective statements by writing "per client report" next to essentially all of her answers. (AR 1823-27). As such, both Dr. Strahl and ALJ Miller found that Ms. Duchovic's opinion merited little weight because it was heavily based on Derry's subjective report. (AR 713, 744-45).

Derry argues, however, that the Seventh Circuit Court of Appeals has found error where an ALJ has excluded a mental health provider's opinion for the reason that it is based on the patient's own report of his symptoms. In doing so, the Seventh Circuit explained: "A psychiatrist does not merely transcribe a patient's subjective symptoms. Mental-health assessments normally are based on what the patient says, but only after the doctor assesses those complaints through the objective lens of her professional expertise." *Mischler v. Berryhill*, — F. App'x —, 2019 WL 1299948, at *5 (Mar. 20, 2019) (citation omitted); *see also Price v. Colvin*, 794 F.3d 836, 840 (7th Cir. 2015) ("But psychiatric assessments normally are based primarily on what the patient tells the psychiatrist, so that if the judge were correct, most psychiatric evidence would be totally excluded from social security disability proceedings—a position we rejected . . . ." (citation omitted)); *Adaire v. Colvin*, 778 F.3d 685, 688 (7th Cir. 2015) (finding that the ALJ made "the fundamental error that 'subjective' statements are to be given zero weight").

The foregoing cases, however, are distinguishable from the instant case. Here, Ms. Duchovic expressly qualified her answers on the questionnaire by writing "per client report" beside them. Thus, her opinion *does* appear to "merely transcribe [Derry's] subjective symptoms," making it an exception to the norm. *Mischler*, 2019 WL 1299948, at *5. That is,

11

there is no indication that Ms. Duchovic ever actually assessed Derry's subjective complaints "through the objective lens of her professional expertise." *Id.* (citation omitted). Therefore, on this unique record, ALJ Miller's decision to assign little weight to Ms. Duchovic's questionnaire is logical and adequately supported by evidence of record, namely, by the opinion of Dr. Strahl. *See, e.g.*, *Edwards v. Comm'r of Soc. Sec.*, No. 1:17-cv-30, 2018 WL 442328, at * 9 (S.D. Ohio Jan. 16, 2018) (affirming the ALJ's discounting of a mental health therapist's opinion that was replete with statements— "per client report," which reflected that she heavily relied on the patient's subjective reports with no other evidentiary support); *Gosse v. Colvin*, No. 14-14066-LTS, 2015 WL 7253679, at *10 (D. Mass. Nov. 17, 2015) (affirming the ALJ's discounting of a treating psychiatrist's opinion where the physician prefaced each check-the-box answer with the words "Per Client Report'); *Akers v. Colvin*, No. 12-CV-489-FHM, 2013 WL 4500783, at *3 (N.D. Okla. Aug. 21, 2013) (affirming the ALJ's discounting of a physician's opinion where it was conclusory with little explanation of the evidence relied on in forming the opinion about the claimant's mental impairments, and the physician qualified some limitations with "per client's report").

Not to be deterred, Derry contends that ALJ Miller selectively reviewed the evidence when concluding that Derry was functional when compliant with his medications and not abusing substances. Indeed, "[a]n ALJ may not select and discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307-08 (7th Cir. 1995) (citations omitted). "An ALJ's failure to consider an entire line of evidence falls below the minimal level of articulation required." *Id*. (citation omitted).

As Derry sees it, that his medications were adjusted 16 of the 25 times he was seen for medication management at Park Center from February 2013 through August 2017, and that counseling, case management, and group therapy services were added to his treatment plan, is evidence that cuts against ALJ Miller's conclusion that Derry was functional when taking his medications and not abusing substances. (DE 18 at 12-13). But the ALJ sufficiently summarized Derry's treatment history throughout his decision and minimally articulated his consideration of this evidence. (*See* AR 713-19).

Furthermore, as already explained, ALJ Miller's assessment is supported by the testimony of Dr. Strahl, who opined that Derry's medications were effective when Derry took them reliably and abstained from substances.[4] (AR 742). Dr. Strahl acknowledged that at different points in the record Derry had stopped and started his medications, resulting in his decompensation. (AR 741; *see* AR 713-19). But aside from those circumstances, Derry fails to point to any time where his medication adjustments were other than routine. "An impairment that is controllable or amenable to treatment does not support a finding of disability." *Tomlin v. Colvin*, No. 4:13CV2424 SPM, 2015 WL 58934, at *16 (E.D. Mo. Jan. 5, 2015) (citation omitted).

Additionally, Derry contends that ALJ Miller ignored that his mental health providers at Park Center characterized his substance abuse as a mild problem. (*See, e.g.*, AR 437, 1288). But Dr. Strahl directly responded to this issue when Derry's attorney questioned him at the hearing: Dr. Strahl explained that Park Center *still* diagnosed Derry with a cannabis use disorder or poly

---

[4] ALJ Miller's conclusion is supported by Dr. Horton's narrative opinion as well, as Dr. Horton opined that Derry's "symptoms appear to be managed better when he is no longer a [drug and alcohol] abuser." (AR 865).

13

substance dependence, which means "[i]t's causing a problems as far as they're concerned in some way" (AR 750; *see, e.g.*, AR 1183, 1208, 1243, 1310, 1352, 1385, 1426, 1447, 1471, 1480, 1509, 1516, 1541, 1571). In fact, one of Derry's treatment goals at Park Center was to "[a]bstain from marijuana." (*See, e.g.*, AR 1483-84). Dr. Strahl opined that Derry's ongoing use of cannabis for most of the period at issue and his use of Spice—"a psychotic inducing agent"—as recently as August 2017 aggravated his bipolar condition. (AR 716, 740, 742-44); *see Chandler v. Astrue*, No. 1:08 CV 2265, 2010 WL 148124, at *4 (N.D. Ohio Jan. 8, 2010) ("The purpose of the medical expert is to advise the ALJ on medical issues, answer specific questions about the claimant's impairments, the medical evidence, the application of the listings, and functional limitations based on the claimant's testimony and the record." (citations omitted)). As such, ALJ Miller did not err by relying on Dr. Strahl's testimony that Derry's substance abuse aggravated his bipolar disorder. *See, e.g.*, *Dean v. Comm'r of Soc. Sec.*, No. 3:12-cv-267, 2013 WL 4518744, at *7 (S.D. Ohio Aug. 26, 2013) ("[T]he ALJ did not err in relying on the medical expert's recommendations to help formulate Plaintiff's RFC." (citation omitted)); *Chandler*, 2010 WL 148124, at *4 ("[I]t is proper for the ALJ to rely on medical expert testimony in order to resolve conflicts between medical opinions." (citations omitted)).

Finally, Derry challenges ALJ Miller's consideration of Ms. Duchovic's treatment note dated August 27, 2017, in which Ms. Duchovic documented that Derry was pleasant, attentive, cooperative, and alert; had a normal memory; and had a euthymic but depressed and anxious mood. (AR 718, 1480-84). Ms. Duchovic also wrote in the treatment note that Derry reported feeling depressed in the morning but would "pull out of it around noon." (AR 718). Derry disputes ALJ Miller's characterization of this treatment note (as well as Ms. Duchovic's other

14

notes) as not "fully support[ing]" and not "entirely consistent" with Ms. Duchovic's questionnaire. (AR 718). Derry asserts that Ms. Duchovic's statement on the questionnaire that he would have to leave work early due to crying episodes *is* entirely consistent with her August 27, 2017, treatment note.

Not so. Ms. Duchovic's questionnaire states that Derry would be able to get himself to work but would have problems staying at work (*see* AR 789 (indicating that Derry worked mornings at Papa Murphy's Pizza)), while her treatment note two months earlier indicates that Derry has crying episodes in the morning but would pull out of it by noon. (AR 1480-82, 1825). Therefore, Derry's assertion that Ms. Duchovic's November 2017 questionnaire is "entirely consistent" with her treatment note from just two months earlier (as well as her other treatment notes) is unpersuasive. (DE 18 at 13).

For all of the foregoing reasons, ALJ Miller's discounting of the mental impairment questionnaire completed by Ms. Duchovic on November 27, 2017, is supported by substantial evidence.

### D. *Garrett Hill Affidavit*

Derry also argues that ALJ Miller erred by failing to evaluate the one-page affidavit dated October 24, 2017, from Garrett Hill, the owner of Papa Murphy's Pizza where Derry was employed on a part-time basis from January 2009 to July 2012. (AR 1147). In the affidavit, Mr. Hill stated that Derry "would show up for work," but had frequent crying episodes and "couldn't necessarily make it through the day" and would be sent home. (AR 1147). Mr. Hill stated that Derry was scheduled at busy times when they had enough people to cover so that they did not need to rely on him. (AR 1147).

Derry contends that ALJ Miller's failure to expressly address Mr. Hill's affidavit in his decision constitutes reversible error because "it is from a neutral third party and supports a key finding of Ms. Duchovic that Derry would be tardy or late for work greater than three times a month." (DE 18 at 14). However, an ALJ "need not address every piece of evidence in his decision." *Sims v. Barnhart*, 309 F.3d 424, 429 (7th Cir. 2002) (citation omitted). Rather, an ALJ must only "minimally articulate his or her justification for rejecting or accepting specific evidence of disability," which has been described as a "lax standard." *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008) (citation omitted).

Here, contrary to Derry's argument in his brief, Mr. Hill's affidavit does not support Ms. Duchovic's opinion "that Derry would be tardy or late for work greater than three times a month." (DE 18 at 14). Rather, Mr. Hill's affidavit states just the opposite—that Derry showed up for work (AR 1147); there is no mention of tardiness in the affidavit. Thus, the affidavit arguably speaks only to Ms. Duchovic's opinion that Derry would have to leave work early more than three times a month.

Significantly, however, most of Derry's employment with Papa Murphy's Pizza occurred prior to his alleged disability onset date of May 3, 2012, and during a time that Derry admitted he was regularly using marijuana or Spice. (*See* AR 737-39 (testifying that it "was pretty close to everyday use for a while")). Derry testified at the hearing that his use of marijuana actually *worsened* his anxiety. (AR 713, 739). As such, Mr. Hill's affidavit does not speak to Derry's ability to work when he is taking his medications as prescribed and refraining from using substances.

For these reasons, ALJ Miller's failure to expressly discuss Mr. Hill's affidavit—which

16

addresses a time period when Derry admitted he was regularly using substances, and that his use of substances worsened his anxiety—does not rise to the level of necessitating a remand of the Commissioner's final decision.

## IV.  CONCLUSION

For the foregoing reasons, the decision of the Commissioner is AFFIRMED.  The Clerk is directed to enter a judgment in favor of the Commissioner and against Derry.

SO ORDERED.

Entered this 24th day of April 2019.

/s/ Susan Collins  
Susan Collins  
United States Magistrate Judge